UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
PAUL OHLSON, on behalf of himself and all
others similarly-situated,

                   Plaintiff,

           - against -

THE CADLE COMPANY, INC., et al.

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM & ORDER**
04 Civ. 3418 (DRH) (ETB)

**APPEARANCES:**

**ROBERT LOUIS ARLEO, ESQ.**
Attorney for Plaintiff
225 East 79th Street, Suite 2B
New York, NY 10021

**VLOCK & ASSOCIATES, P.C.**
Attorney for Defendants
230 Park Avenue
New York, NY 10169
By: Stephen Vlock, Esq.

**HURLEY, District Judge:**

      Plaintiff Paul Ohlson ("Plaintiff") filed the above-captioned putative class-action

alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et*

*seq.*, based upon Defendants' alleged false, deceptive, and misleading practices in conjunction

with attempts to collect debts, *Id.* § 1694e; unfair practices in an attempt to collect alleged debts,

*Id.* § 1694f; and using a name other than the true name of the collection agency, *Id.* § 1694e(14).

Presently before the Court is (1) a motion for summary judgment by Defendants Steven J.  Vlock

and Vlock & Associates (the "Vlock Defendants"); (2) a motion by Plaintiff for partial summary

judgment; and (3) a cross-motion for summary judgment by defendants the Cadle Company ("Cadle Co."), Bobby D. Associates ("BDA"), Daniel Cadle ("Cadle"), John Doe, alias "Ray Diamond ("Diamond") (collectively "Remaining Defendants").  For the reasons set forth below, the motions by Vlock Defendants is granted in part and denied in part without prejudice to renewal, Plaintiff's motion is denied, and the cross-motion of Remaining Defendants is granted in part and denied in part.

## Background

The following material facts are undisputed unless otherwise noted.

On April 5, 2004, a letter signed by Diamond as "Account Officer" was sent to Plaintiff (the "April letter").  The letterhead on that letter is a follows:

BOBBY D. ASSOCIATES
100 North Center Street
Newton Falls, OH 44444
(330) 872-0918
(888) 462-2353 (888-GOCADLE)
FAX (330) 872-5367

The letter states that BDA is the current owner and holder of a credit card debt, owed by Plaintiff and originally owned by Chase Manhattan Bank, which debt is in default. The letter goes on to demand payment of $12,944.97 consisting of principal and accrued interest through April 2, 2004. The letter advises "IN ACCORDANCE WITH 15 U.S.C. 1692E(11), PLEASE BE ADVISED THAT THE PURPOSE OF THIS LETTER IS TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE"

(capitalization in original).[1]

On June 23, 2004, a second letter on the same BDA letterhead and again signed by

Diamond as "Account Officer" was sent to Plaintiff (the "June letter").  The letter states, in

relevant part:

> Enclosed are copies of the documents that I recently
> received through our attorney as a result of the subpoena.
>         As you can clearly see, they are listing you as secondary on
> the account with Eric Ohlson.  I have asked our attorney, Steven
> Vlock, to proceed with litigation against Eric Ohlson with you
> being named as a co-defendant.
>         As of the date of this letter, your current account balance is
> $13,089.08 and is accruing interest at the rate of $8.68 per diem.  I
> am willing to accept a settlement of no less than $10,000.00.  If
> you find this acceptable, please inform me no later then [sic] 5p.m.
> July 8, 2004.  I will also be willing to discuss reasonable payment
> arrangements to include payments being electronically withdrawn
> from your checking account and agreeing to a consent judgment.
>         If the proposed settlement is not acceptable to you, then my
> company will continue to pursue litigation against you and Eric
> Ohlson.
>         In accordance with 15 U.S.C. 1692e(11), please be advised
> that the purpose of this letter is to collect a debt, and any
> information obtained from you will be used for that purpose.

(Giordano Aff. Ex. B.)

Thereafter, the Vlock Defendants, acting as attorneys, commenced an action on July 2,

2004[2] entitled <u>Bobby D. Associates v. Eric Ohlson and Paul Ohlson</u>, Index No. 106744/04, in the

---

[1]  The April 5, 2004 letter is an exhibit to the amended complaint and was submitted on
this motion numerous times, including as Ex. A to the Giordano Affirmation.

[2]  In their motion papers, the Vlock Defendants refer to the Collection Action as being
filed on July 1, 2004.  However, the summons submitted to the Court, although dated July 1,
2004, sets forth the date of filing as July 2, 2004. *See* Giordano Ex. C.  Inasmuch as N.Y.
C.P.L.R. 305 requires that the summons "shall bear the index number assigned and the date of
filing with the clerk," the Court shall use the latter date.

Supreme Court, New York County to recover the sums allegedly due by Plaintiff on the credit

card debt (the "Collection Action").  (Giordano Aff. Ex. C.)  Prior to the summons and complaint

filed by the Vlock Defendants, Plaintiff had received the April and June letters, as well as letters

from Chase Bank and Commercial Financial Services, Inc.

On August 9, 2004, Plaintiff commenced the instant putative class action.[3]  As originally

filed, the action named only Cadle Co. and Diamond as defendants.  In essence, the complaint

alleged that the June letter was false and misleading in various respects and that Cadle Co. used

the false name "Bobby D. Associates" in the June letter, said name being a name other than

Cadle Co.'s true name.

On July 1, 2005, Plaintiff moved for leave to file an amended complaint to add both new

claims and new parties to the instant action.   The proposed amended complaint accompanying

said motion asserted only one cause of action against the Vlock Defendants.  It alleged that in

filing the Collection Action the Vlock Defendants had falsely represented that the debt allegedly

owed by Plaintiff was owed to BDA when in fact Cadle Co. was the owner. By Order dated

March 21, 2006, this Court granted the motion to amend and directed that the amended

complaint be filed by April 21, 2006.

On March 30, 2006, Plaintiff filed an amended complaint.  As filed, the amended

complaint differs from the proposed pleading attached to the motion to amend in that it adds

additional allegations against the Vlock Defendants.  The filed pleading asserted that the

complaint in the Collection Action was a communication under the FDCPA and did not contain a

---

[3] To date, no motion for certification of any class had been made.  Accordingly, only
Plaintiff's individual claims are at issue.

4

"30 day debt verification and/or dispute rights clause."  Despite the absence of any indication on the docket for this case that a supplemental summons was issued and served, together with the amended complaint, upon the Vlock Defendants, said defendants filed an answer to the amended complaint.[4]  That answer asserts the following affirmative defenses, among others: the lack of personal jurisdiction, the statute of limitations, and that "Plaintiff improperly, without leave of Court, altered his proposed Amended Complaint to include new and additional claims in his Amended Complaint . . . ."

In the meantime, on June 14, 2005, Plaintiff had commenced an action in the United States District Court for the Southern District of New York against the Vlock Defendants alleging that the summons and complaint filed by them in the Collection Action was a communication as defined by the FDCPA and failed to contain a 30 day debt verification and/or dispute rights clause (the "SDNY action").  By stipulation dated March 30, 2006 and "So Ordered" by that court on April 17, 2006, Plaintiff voluntarily dismissed the SDNY action without prejudice.

The Court shall address the additional *material*  facts[5] proffered by the parties as they become relevant to the issues at hand.

---

[4] The Court notes that there is also no indication that any supplemental summons was issued for the other defendants added by the amended complaint, to wit, BDA, Daniel C. Cadle and John and Jane Does No. 2 to 50.  Nor are there any affidavits of service on file for the amended complaint.

[5] The Court shall not address "facts" that are clearly immaterial to the issues at hand, for example,  the Vlock Defendants' representation of Cadle Co. in a multitude of cases.

5

## Discussion

### I.  Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor.  *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried.  *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings,

6

conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to

the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'"  *Brady*, 863

F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and

draw all reasonable inferences in favor of the non-moving party.  *See Donahue v. Windsor Locks*

*Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).  That being said, it is well-established that

a non-movant cannot defeat summary judgment with nothing more than "unsupported

assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or

the allegations in its pleadings.  *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996);

*see also* Fed. R. Civ. P. 56(e).

Having set forth the appropriate standard for determination of the pending motions, the

Court shall proceed first to address the question of the ownership of  the debt allegedly owed by

the Plaintiff inasmuch as it is common to each of the three pending motions.  Next, the Court will

proceed to Vlock Defendants' motion vis a vis the summons and complaint in the Collection

Action as an initial communication.  The Court will then address Remaining Defendants' motion.

## II.     Ownership of the Alleged Debt.

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading

representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.

"Without limiting the general application of the foregoing," the statute sets forth various conduct

that is a violation of § 1692e.   Included in the enumeration of prohibited acts is "[t]he use of any

business, company, or organization name other than the true name of the debt collector's

business, company or organization." *Id.* at 1692e(14).

It is the use of a name other than the debt collector's true name that forms the crux of

8

many of Plaintiff's claims against the defendants.  According to Plaintiff, Cadle Co. is the true owner of the alleged debt but the April and June letters, as well as the Collection Action, falsely represent BDA as the owner.   Defendants have moved for summary judgment on this claim on the grounds that the debt at issue is, in fact, owned by BDA.

In support of their motions, defendants has submitted an affidavit of Diamond.  In that affidavit, Diamond avers that "[i]n February 1997, the credit card account was assigned to BDA, and BDA has been the owner and holder of the credit card account from that time to the present."[6]  (Diamond Aff. at ¶ 5.)  Curiously, on the present motion defendants do not submit any documentation evidencing the assignment.[7]

Plaintiff relies on the following information which he claims establishes, or at the very least creates a question of fact as to whether, the debt is owned by Cadle Co.: (1) the fact that at unspecified times prior to the April and June letters, he received calls from Cadle Co.; (2) Cadle Co. and BDA share the same address; (3) BDA's phone number as set forth on the June and April letters is "GOCADLE" and, in fact, the two companies "share" the telephone system, including the facsimile number; (4) although he claims to be employed by BDA, Diamond admittedly receives a paycheck drawn on a Cadle Co. bank account; (5) BDA is a partnership of which Cadle is a partner; (6) certain materials from a case entitled Kuehn v. Cadle Co. (Civil

---

[6] At his deposition, Diamond testified that he knows BDA is the owner because he saw the loan sale agreement whereby BDA purchased the debt from the Cadle Co.  See Diamond Dep. at 14 (said deposition is Ex. B to Pl.'s Resp. to Defs.' 56.1 Statement).

[7] In connection with another motion in this case, defendants did submit a document dated February 1997 reciting that certain accounts listed in "Exhibit A" were being sold by Cadle Co to BDA.  No "Exhibit A" was attached thereto so it is unknown whether the account at issue was one of the account sold.

Action No. 04-432 M.D. Fla.) ("Kuehn"), including the deposition of Cadle, the affidavit of one

Dick Platt and Cadle's unverified interrogatory answers; and (7) a Financial Assets Sale

Agreement between Securitized Multiple Assets Rated Trust 1996-3 and Cadle Co.  As Plaintiff

bears the burden of establishing that Cadle Co. and not BDA is the owner of the debt, the Court

shall examine the bases for Plaintiff's contention, proceeding in reverse order.

The Financial Assets Sale Agreement provides no support for the claim that Cadle Co. is

the owner of the debt.  According to the agreement submitted to the Court, certain assets

identified in the "Financial Asset Schedule" which is Exhibit "A" to the agreement are the

subject of sale.  However, no Exhibit "A" or "Financial Asset Schedule" was provided to the

Court.  It would be mere conjecture for this Court to conclude that the debt at issue was included

in this sale.  Conjecture and surmise are insufficient to defeat a motion for summary judgment.

*See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Similarly, the materials provided from the Kuehn action do not support any inference that

the debt is owned by Cadle Co.  Turning first to the deposition of Cadle, Plaintiff fails to provide

any pinpoint citations to the deposition transcript or to direct the Court's attention to any

particular testimony, apparently satisfied to have this Court hunt like a pig looking for truffles

buried in the transcript.[8]  However, having reviewed the transcript, the Court is unable to discern

any testimony regarding the debt at issue.  Cadle testified as follows concerning the services

Cadle Co. provides to related entities:

> It leases the building here in Newton Falls from a related
> entity, and it charges them pro rata rent.  It pays the utility bills,

_____

[8] *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like
pigs, hunting for truffles buried in briefs.")

10

> charges a pro rata portion of the insurance.  It provides employees
> that the individual entities can use the employees and reimburse the
> company for.  It hires CPAs to do audits and file tax returns on a
> gross basis, and they pay their proportionate share of those
> expenses.  It has three in-house attorneys that the individual
> entities can use and charge – pay their proportionate share of the
> in-house attorney expenses.  It provides computer services,
> telephone services.  We don't have 100 separate telephone
> numbers here.  All the people use the same general telephone
> number.  And, in general, that is it.

(Dep. of Daniel C. Cadle in *Kuehn v. Cadle Co.* at p. 15-16. (Ex. A to Pl.'s Resp. to Vlock 56.1

Statement).)  At best, the testimony supports the proposition that Cadle Co. provides personnel,

office space and services, including telephone services, to certain related entities.  The same is

true for the unsworn discovery responses submitted by plaintiff; they merely confirm that Cadle

Co. provides various services to certain companies.[9]  Finally, not having the benefit of any

explanation by Plaintiff of the significance of the Platt affidavit, the most the Court can glean

from that affidavit is the proposition that Cadle Co. does in fact purchase debtors' accounts from

either the original creditor or an assignee. The affidavit does not refer, however, to any particular

debt, nonetheless the instant debt, as having been purchased by Cadle Co.

So too,  Plaintiff's receipt of  telephone calls from the Cadle Co. does not support any

inference that Cadle Co. was the owner of the debt at any time in or after April 2004.  According

to Plaintiff these calls were received in the  "late 90's or  early 2000 sometime." (Ohlson Dep. at

p. 20.)  But he does not provide the Court with any particulars of the conversation such as

whether the caller stated or inferred that the debt was owed to Cadle Co., as opposed to Cadle

---

[9]  While neither the deposition testimony nor the discovery responses even mention BDA,
the Court will infer that these same services are provided to BDA in view of the deposition
testimony of Diamond.  The import of this inference is discussed *infra.*

Co. calling to collect on another entities' behalf.[10]

Turning to the remaining information relied upon by Plaintiff, the Court finds that it is insufficient, either individually or collectively, to permit a trier of fact to reasonably conclude that Cadle Co. is the owner of the debt during the relevant period.  That Cadle Co. supplies office space, telephone lines, computers or even personnel to BDA does not indicate that Cadle Co. is the owner of the debt. At best, it shows administrative overlap in their operations.  *Cf. Winter-Wolff Internat'l v. Alcan Food & Packaging, Food & Tobacco, Inc.*, Civil Action No. 05-2718 (E.D.N.Y. 2008) slip op. at 11 (holding allegations that two companies share a sales force, physical office, management and secretarial staff, while consistent with a close relationship, do not by themselves justify a finding of an alter ego relationship). Moreover, the Court is underwhelmed with the contention that the use of "GOCADLE" on BDA's letterhead demonstrates the Cadle Co. has an ownership interest in the debt.

Finally, Plaintiff's papers make references to BDA as a "shell corporation."  (*See* Arleo Affirm. at  p.2.) While not articulated particularly well, Plaintiff's seems to be arguing that Cadle Co. is the owner of the debt because BDA is merely its instrumentality and the two entities are a single economic enterprise.  While these concepts are usually employed in attempts to hold one corporation liable for the debts or obligations of another entity, they have been asserted by FDCPA plaintiffs (i.e. debtors) as a vehicle for the imposition of liability on a FDCPA defendant. *See generally Backuswalcott v. Common Ground Community HDFC*, 104 F. Supp.2d 363, 369 (S.D.N.Y. 2000).  There is insufficient evidence, however, in this case to support the conclusion

_____

[10]  Plaintiff cannot rely upon the assertions in his pleadings regarding these telephone calls. *See Gottlieb*, 84 F.3d at 518.

that BDA is the mere instrumentality of Cadle Co. or that the two are a single economic

enterprise.  "[T]here is a presumption of separateness . . . which is entitled to substantial weight."

*Backuswalcott,* 104 F. Supp.2d at 369 (quoting *Amer. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60

(2d Cir. 1988).   No evidence has been proffered as to BDA's financial status, more particularly

its undercapitalization.  *See Winter-Wolff,* slip op. at 11.  Similarly, no evidence has been

presented that the two entities have not followed proper corporate formalities. Finally, there no

evidence that the two entitles intermingled funds or otherwise operate as a single economic

enterprise beyond the sharing of employees and facilities.  In the absence of such evidence,

Plaintiff has failed to raise an issue of fact that BDA and Cadle Co. should be treated as one

entity or that the corporate veil should be pierced so as to render Cadle Co. the owner of the debt.

*See, e.g., Orenbuch v. North shore Health Sys., Inc.,* 250 F. Supp. 2d 145, 150 (E.D.N.Y. 2003);

*Backuswalcott,* 104 F. Supp.2d at 369-70;  *Colman v. North Shore Health System,* 1998 WL

34077715 (E.D.N.Y. July 2, 1998).

In sum, defendants have put forth in the Diamond affidavit evidence that Plaintiff cannot

establish his claim that Cadle Co., rather than BDA, is the owner of the debt.  The burden

therefore shifted to Plaintiff to offer "persuasive evidence that his claim was not 'implausible.'"

*Brady*, 863 F.2d at 211.  He has failed to sustain that burden. The evidence offered is not

sufficient to permit the trier of fact to conclude that Cadle Co. was the owner of the debt at the

relevant time.[11]  Plaintiff's repeated assertions that Cadle Co. is the true owner of the debt does

---

[11]  The Court notes that Plaintiff has not submitted an affidavit pursuant to Fed. R. Civ. P.
56(f) averring that it cannot present facts essential to justify its opposition to the motion and
setting forth what additional discovery is necessary.  In fact, although Plaintiff sought and was
granted permission to cross-move for additional discovery in opposition to the Vlock Defendants
motion, no such cross-motion for discovery was filed.

not change this result when his evidence fails to support his characterization.

Accordingly, summary judgment is granted in favor of Vlock Defendants and Remaining Defendants on the FDCPA claims premised on the allegation that BDA was falsely represented as the owner of the debt when it was owned by Cadle Co. is granted.  Plaintiff's motion for summary judgment on this claim is denied.

### III.  The Collection Action Summons and Complaint as an Initial Communication

Having disposed of that portion of Vlock Defendants motion addressed to the allegations regarding false representations of ownership, the Court turns to their motion on the remaining claim against them. According to Plaintiff's the summons and complaint in the Collection Action was an "initial communication" under the FDCPA and Vlock Defendants violated the FDCPA by failing to provide the validation notice required by 15 U.S.C. 1692(g)(a).  In support of their motion for summary judgment on this claim, Vlock Defendants argue that (1) the claim is barred by the statue of limitations as it was first asserted in the amended complaint filed March 30, 2006 and does not relate back to the filing of the initial complaint; (2) it was improperly added because it was not contained in the proposed amended complaint attached to Plaintiff's motion to amend; and (3) the summons and complaint is not an "initial communication" under the FDCPA and, in any event, at the time they were served there was no Second Circuit decision holding that pleadings constitute a communication for purposes of § 1692g.

### A.  The Statute of Limitations

Section 1692k provides that an action to enforce any liability created by the FDCPA must be brought "within one year from the date the violation occurs."  15 U.S.C. § 1692k.  Here the alleged violation is the failure to provide the validation notice required by 15 U.S.C. 1692g(a).

Section 1692g(a) requires that "[w]ithin five days after the initial communication with a

consumer in connection with the collection of any debt" a debt collector must:

> send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after
> receipt of notice, disputes the validity of the debt, or any portion
> thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in
> writing within the thirty-day period that the debt, or any portion
> thereof, is disputed, the debt collector will obtain verification of
> the debt or a copy of a judgment against the consumer and a copy
> of such verification or judgment will be mailed to the consumer by
> the debt collector; and
> (5) a statement that, upon the consumer's written request within the
> thirty-day period, the debt collector will provide the consumer with
> the name and address of the original creditor, if different from the
> current creditor.

15 U.S.C. § 1692g(a).

According to Vlock Defendants, "[i]n this case, the statute of limitations began to run on

the date that the Vlock Defendants filed the summons and complaint in the Supreme Court of the

State of New York . . . ." (Vlock Mem in supp. at 6.)  The Court disagrees.

First, under the FDCPA, a debt collector has five days from the initial communication to

provide the validation notice.  Thus, the statute is not violated until five days have passed from

the initial communication without any validation notice.  More fundamentally, however, the five

day period does not commence with the filing of the summons and complaint.  Rather, it

commences with the service of the summons and compliant on the debtor.  *See Goldman v.*

*Cohen*, 2004 WL 2937793 (S.D.N.Y. Dec. 17, 2004), *aff'd*, 445 F.3d 152 (2d Cir. 2006) (holding

that a legal pleading is an initial communication under the FDCPA and that the FDCPA was

violated where defendant failed to provide the debtor with the § 1692g validation notice at the time or within five days of serving Goldman with the notice of petition).  The communication does not take place until the pleadings are served on the debtor.

Here, there is no evidence before the Court as to when Plaintiff was served with the Collection Action pleadings.  In the absence of such evidence, the Court cannot determine when the violation took place and ergo when the clock began to run for statute of limitations purposes. Vlock Defendants' motion for summary judgment on the validation notice claim as barred by the statute of limitations is denied.[12]

### B.  Improper Inclusion of the Initial Communication Claim

Vlock Defendant's second argument in support of its motion for summary judgment regarding the Collection Action is that Plaintiff improperly added the claim without consent or leave of court in violation of Fed. R. Civ. P. 15.  Conceding, as he must, that he did not have leave of court, Plaintiff maintains that the Vlock Defendants "implicitly consented in their numerous writings that the Plaintiff would set forth his claim for violation of 15 U.S.C. sec. 1692g in his amended complaint once the Court herein granted leave to file said amended complaint."  (Pl.'s Mem. in Opp. to Vlock Motion at 4-5.)  He further asserts that he "has a strong explanation for filing his amended complaint *and* that the [Vlock Defendants] did not assert any objections to the amended complaint until they tricked the Plaintiff into discontinuing his [SDNY] action . . . ."  (*Id*. at 5.)

On March 29, 2006, Plaintiff sent the following letter to Vlock Defendants:

_____

[12]  It therefore is unnecessary for the Court to address whether the amendment asserting this claim relates back to the filing of the initial complaint.

> I am corresponding in regard to the correspondence dated
> March 22, 2006 which you forwarded to Judge Richard Berman.
> Enclosed herein please find a draft Stipulation of Voluntary
> dismissal in regard to the [SDNY] action.  The execution and filing
> of said stipulation will negate the need for your firm to move to
> dismiss the [SDNY action].  The claims set forth therein will
> simply be set forth in the amended complaint which will be filed in
> the matter of Ohlson v. Cadle Company, et al., CV-043418.
> Please advise.

(Letter dated March 29, 2006 (Ex. e to Pl.'s Resp. to Defs.' 56.1 Statement.)  In response, Vlock

Defendants simply signed the Stipulation of Discontinuance and returned it.  The request in

Plaintiff's March 29, 2006 letter to "please advise" can be viewed as an inept attempt to gain

Vlock Defendants' consent to the addition of the discontinued claim to the instant action.  While

counsel should be cognizant of the need to be clear in any request for consent made to an

opposing party, it is conceivable that the "please advise" was such a request. The assertion that

Vlock Defendants did not object to the amended pleading until after the SDNY action was

discontinued is problematic. Vlock Defendants were not named as parties to this action in the

original complaint and therefore could not object, on their own behalf, in this action.  They could

have, however, voiced objection in the SDNY action but they did not.

Having reviewed all the correspondence related thereto, there appears to be questions of

fact precluding summary judgment[13] as to the claim that the claim was improperly added.

Accordingly, the motion for summary judgment on the grounds the claim was improperly added

is denied.

---

[13]  It seems to the court, moreover, that a motion to strike, rather than summary judgment would be the appropriate vehicle to deal with this issue.

### C.  The Merits of the Initial Communication Claim

The third basis asserted by Vlock Defendants for summary judgment on the § 1692g claim is that at the time the summons and complaint was served there was no Second Circuit authority holding that a legal pleading was a "communication" under the FDCPA triggering the requirement of a validation notice.  According to defendants, they relied on the Eleventh Circuit's decision in *Vega v. McKay*, 351 F.3d 1334 (11th Cir. 2003) which held that a legal pleading was not a communication within the meaning of the FDCPA; the Second Circuit's decision to the contrary, *Goldman v. Cohen*, 445 F.3d 152 (2d Cir. 2006) was not rendered until after the Collection Action was filed.  Vlock Defendants do not, however, indicate the relevance of the state of the law.  For example, is intent an element or is there strict liability?   If intent and the state of the law is relevant then would not the date of service of the Collection Action (i.e. the date of the communication) and the October 13, 2006 amendment to § 1692g, *see* 15 U.S.C. § 1692g(d) be relevant.  Vlock Defendants' motion seeking summary judgment on the ground that the summons and complaint in the Collection Action was not a communication within the meaning of § 1692g is denied without prejudice to renewal upon a fuller and more comprehensible presentation of the position urged.

### IV.    Remaining Defendants' Motion for Summary Judgment

Remaining Defendants move for summary judgment on several grounds.  First, they maintain that the claims against the Cadle Co. must be dismissed because they are premised on the assertion that Cadle Co. is misrepresenting and hiding behind the name BDA.  Second, they postulate that Diamond is exempt from the FDCPA while collecting the creditor's debts in the creditor's name.  Finally, they argue the  June letter does not violate the FDCPA.  The Court

shall address each of these assertions in turn.

**A. Cadle Co.**

The claims asserted against the Cadle Co. are all premised on the contention that it, and not BDA, is the true owner of the debt. Having determined that defendants are entitled to summary judgment on that assertion, the motion for summary judgment in favor of Cadle. Co. is granted.

**B. Diamond**

Remaining Defendants have moved for summary judgment on Diamond's behalf arguing he is exempt from liability. They argue that Diamond sent the April and June letters in the course of his employment for BDA, who is the actual creditor, and a creditor's employees and officers are exempt from FDCPA liability while collecting the creditor's debts in the creditor's name. The problem with this argument is that is presupposes that BDA is a creditor as opposed to a debt collector.

Where, as here, a debt has been assigned, the assignee will be "treated as a debt collector if the debt sought to be collected was in default at the time it was obtained by such a person." *Dolan v. Fairbanks Capital Corp.*, 2005 WL 1971006, *3 (E.D.N.Y. Aug. 16, 2005) (citing 15 U.S.C. § 1692a(6)(F)(ii)). There is, at the very least, a question of fact[14] as to whether the debt in question was in default at the time it was obtained by BDA. If it was in default, the FDCPA does apply to the attempts to collect the debt at issue.

_____

[14] The Court in the Collection Action found that the debt was in default at the time BDA became the owner thereof. Neither party addressed the collateral estoppel effect of that decision on Diamond and accordingly neither shall this court. In any event, Plaintiff has submitted Chase Bank documents indicating that the debt was charged off as a bad debt prior to February 1997.

The motion for summary judgment on the ground that there is no claim against Diamond is denied.

## C.  The June Letter

Remaining Defendants have moved for summary judgment on Plaintiff's claim that the June letter violates the FDCPA.  Having earlier disposed of Remaining Defendants' motion vis a vis the letter's alleged misrepresentation of the ownership of the debt, the court shall now address Plaintiff's remaining claims as to the June letter.  According to Plaintiff, the letter is false, deceptive and misleading because (1) it contained a false and misleading deadline; (2) contained a false sense of urgency; and (3) was false and misleading because he could have arranged a reasonable payment schedule without agreeing to a consent judgment or electronic withdrawal payments from his checking account.

In determining whether a communication is misleading, an objective standard is applied.  That objective standard is measured by how the least sophisticated consumer would interpret a communication from a debt collector.  *DeSantis v. Computer Credit Inc.*, 269 F.3d 159, 161 (2d Cir. 2001); *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237 (2d Cir. 1998).  The purpose of this standard is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).  Reasonableness is included within the least sophisticated consumer standard to "protect debt collectors from unreasonable misinterpretations of collection notices."  *Id.* at 1319.  A court must determine whether the correspondence at issue "can reasonably be read to have two or more meanings, one of which is inaccurate."  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).

Defendants maintains that this Court should adopt the reasoning set forth in *Kahen-*

*Kashani v. Nat'l Action Fin. Servs.*, 2004 WL 1040384 (W.D.N.Y. Apr. 12, 2004) and find that

the June letter does not contain a false and misleading deadline.  In *Kahen-Kashemi*, the plaintiff

received two settlement offers from the defendant. In the first letter, it was stated that the

defendant had the authority to extend the offer deadlines "under certain circumstances."  Also the

letter did not state that this was a final offer, i.e. that subsequent offers would not be made. The

second letter was identical to the first except that the settlement figure was reduced, the response

date was changed and a different contact person was identified.  In rejecting the claim that the

letters contained a false deadline and a false sense of urgency, the court reasoned:

> Defendant as the debt collector and offeror of the settlement could
> extend the deadline for that offer under certain, unspecified
> circumstances.  The fact that the defendant sent the second letter
> with a reduced settlement figure and changed the deadline date
> does not render the first letter false or misleading.  Plaintiff did not
> respond to the first letter and, in an effort to collect something for
> its client, defendant submitted a second letter at a reduced
> settlement amount.  Nothing in either letter made either a one time
> offer that would never come again if plaintiff did not act . . . or
> precluded defendant from contacting plaintiff again about his debt.
> . . . Instead of being ironclad as plaintiff implies, the letters present
> cut off dates for plaintiff's acceptance of the settlement offer and
> payment of the agreed upon amount or as extended by defendant
> under certain circumstances.  As for urgency, the first letter gave
> plaintiff about fifteen days from the date of the letter . . . and the
> second letter gave plaintiff about twenty-two days.

*Id.* at *4.

Insofar as creating a sense of urgency, the June letter, like the first letter in *Kahen-*

*Kashemi*,  gave Plaintiff fifteen days to contact the debt collector.  Like the court in *Kahen-*

*Kashemi*, this Court finds that fifteen days creates no false sense of urgency.

With respect to the false deadline, the letters in *Kahen-Kashemi* specifically stated that

the deadline could be extended and therefore can be distinguished from the letter in the instant case.  Nonetheless, the Court concludes that the June letter does not contain a false deadline.

Plaintiff asserts that the letter contains a false deadline because he believes that BDA would have accepted payment after the deadline or for a lesser amount.  First, there is no factual support for Plaintiff's belief.  Second, and more importantly, the June letter does not set a deadline for payment; rather it sets a date to contact the defendant.  Indeed, it even states a willingness to discuss a reasonable payment arrangement.  The language suggests, even to the least sophisticated consumer that there is "potential for negotiation." *Sarder v, Academy Collection Serv. Inc.*, 2005 WL 615831, at *3 (E.D.N.Y. March 3, 2005), *adopted by Order dated March 24, 2005*, Civil Action No. 02-2486 (Gershon, D.J.). *See also Hernandez v. AFNI, Inc.*, 428 F. Supp, 776 (N.D. Ill. 2006).  Plaintiff's false deadline and false urgency claims fail.

Similarly, the Court finds that the June letter is not false and misleading because Plaintiff could have arranged a reasonable payment schedule without agreeing to electronic withdrawals from his bank account or agreeing to a consent judgment.  Simply stated, the letter does not imply otherwise. Rather, stating a willingness "to *discuss* reasonable payment arrangement *to include*" electronic withdrawal and a consent judgment, suggests the ability to discuss and negotiate other reasonable payment terms.  The letter does not suggest, as Plaintiff maintains, that other "reasonable payment arrangement" are excluded.

Remaining Defendants' motion for summary judgment on the June letter is granted.

## Conclusion

For the reasons set herein, the motions by Vlock Defendants on the claim that they misrepresented the owner of the debt in the Collection Action is granted, and is otherwise denied

22

without prejudice to renewal;  Plaintiff's motion is denied; and the cross-motion of Remaining

Defendants is granted on (1) the claims that they misrepresented the true owner of the debt: (2)

the claims that the June letter was false and misleading; and (3) all claims against Cadle Co., and

is otherwise denied.

       **SO ORDERED.**

Dated: Central Islip, New York
      September 30, 2008

                                 /s/_____

                                 Denis R. Hurley
                                 Senior District Judge