UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
PAUL OHLSON, on behalf of himself and all
others similarly-situated,

                           Plaintiff,                  **ORDER**

           - against -                           04 Civ. 3418 (DRH) (ETB)

THE CADLE COMPANY, INC., et al.

                        Defendants.
----------------------------------X

**APPEARANCES:**

**ROBERT LOUIS ARLEO, ESQ.**
Attorney for Plaintiff
164 Sunset Park Road
Haines Falls, New York 12436

**VLOCK & ASSOCIATES, P.C.**
Attorney for Defendants
230 Park Avenue
New York, NY 10169
By: Stephen Vlock, Esq.

**HURLEY, District Judge:**

       Presently before this Court is Defendants' motion for reconsideration of this Court's Memorandum & Order dated March 2, 2010 ("2010 Order"). For the reasons set forth below, the motion for reconsideration is granted and upon reconsideration the Court adheres to its earlier determination.

**Background**

       The Court has issued a number of decisions in this matter, familiarity with which is presumed. It suffices to note that in its Memorandum & Order dated September 30, 2008 (the "2008 Order") the Court addressed (1) a motion for summary judgment by defendants Steven Vlock and Vlock & Associates (collectively "Vlock Defendants"); (2) a motion for partial

summary judgment by Plaintiff Paul Ohlson ("Plaintiff"); and (3) a cross-motion for summary judgment by defendants The Cadle Company ("TCC")[1], Daniel C. Cadle ("Cadle"), Ray Diamond ("Diamond") and Bobby D. Associates ("BDA"). Because there was a great deal of disagreement between the parties as to what claims remained after the Court's 2008 Order, the Court issued its 2010 Order summarizing the claims which remain as against each defendant. It held as follows:

> As a result of the Court's 2008 Order, there are no remaining causes of action against TCC.
> Causes of action for violation of 15 U.S.C. §§ 1692e and/or 1692f premised upon the following assertions remain outstanding against Daniel Cadle, BDA, and Diamond:
> (1) the April 2004 letter (a) sets forth post judgment remedies available to a creditor prior to the time any judgment had been obtained thereby falsely implying that the Plaintiff had no opportunity to defend any lawsuit commenced against him and that a judgment against the plaintiff was inevitable simply upon the filing and service of the lawsuit, (AC ¶ 23); (b) "threaten[s] illegal action in that [BDA] cannot commence legal action against Plaintiff as [BDA] is not the true owner of the alleged debt and therefore has no standing to commence legal standing to commence legal action as threatened", [fn6] (AC ¶ 24); and (c) "falsely implies that the telephone numbers and fax number set forth thereon are those of [BDA] when said telephone numbers and fax numbers are those of [TCC]," (AC ¶ 25); and
> (2) Diamond compelled a de minimis payment towards the debt owed on the Account knowing the statute of limitations had expired but did not disclose the expiration of the statute of limitations and requested the de minimis payment solely to revive the ability to commence formal legal action to collect the debt, (AC ¶¶26-28).
> As against Vlock and V&A there remains the cause of

---

[1] In the instant Order the Court adopts the parties' use of "TCC" as standing for the Cadle Company, whereas in its September 30, 2008 Order the Court referred to the Cadle Company as "Cadle Co."

action for violation of 15 U.S.C. § 1692g based on the Collection
Action summons and complaint constituting an initial
communication within the meaning of the FDCPA and therefore
were required to contain the 30 day debt verification/dispute
advisement set forth in § 1692g. (AC ¶ 43-44).

---

<sup>FN6</sup> This claim is asserted separately from the claim that
TCC, not BDA, is the owner of the debt and therefore is treated as
a distinct claim. The Court notes, however, that the parties'
summary judgment motions which resulted in the 2008 Order did
not draw a distinction between the claim that BDA was not the true
owner of the debt and the claim that TCC was the true owner of the
debt.

2010 Order at 13-14. In setting forth those allegations and claims which had yet to be addressed because never broached, no less argued in Defendants' summary judgment motions, the Court did not engage in any evaluation thereof. Which is to say, the Court, in fashioning its March 2, 2010 Order, reviewed the amended complaint, containing over thirty paragraphs of allegations, many with multiple and varied subparts, in support of the claimed violations of the Fair Debt Collection Practices Act, to determine which allegations had not been addressed and, thus, remain unresolved.

## Discussion

I. **The Motion for Reconsideration is Granted**

The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court. *See Devlin v. Transp. Comm'ns Union,* 175 F.3d 121, 132 (2d Cir. 1999). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (finding district court properly exercised its discretion to reconsider earlier ruling in light of the introduction of additional relevant case law and substantial legislative history); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.") (citation and internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)). A party may, however, introduce relevant authority that was not before the district court when it initially ruled on the matter. *See Vaughn v. Consumer Home Mortgage Co.*, 2007 WL 140956 at *6 (E.D.N.Y. Jan. 22, 2007). In the alternative, reconsideration is appropriate if a court "misinterpreted or misapplied" relevant case law in its original decision.

     Here, Defendants have not invoked a typical ground in seeking reconsideration, but rather are asking the Court to revisit its March 2, 2010 decision because it purportedly is at odds with portions of the September 30, 2008 Order. Although the Court perceives no such inconsistency, reconsideration is granted given the importance of both plaintiff and defendants understanding

4

which of plaintiff's claims remain outstanding.

## II.     Upon Reconsideration the Court Adheres to its Decision

In support of reconsideration, Defendants argue that all claims concerning ownership of the debt, and not just the claim that TCC was the true owner of the debt, were dismissed by the 2008 Order. Defendants cite and underscore portions of that Order as follows:

> Accordingly, summary judgment is granted in favor of the Vlock Defendants and Remaining Defendants on the FDCPA **claims premised on the allegation that BDA was falsely represented as the owner of the debt** when it was owned by Cadle Co. is granted.

Defendants' Mem. in Supp. of Reconsideration at 11 (quoting September 30, 2008 Order at 14 with emphasis supplied by Defendants).

The quoted portion from Defendants' brief makes evident that Defendants' argument for reconsideration is premised on their emphasis of one portion of the quoted sentence to the exclusion of the remainder of the same sentence. By excluding the latter portion of the sentence Defendants proffer that the Court dismissed claims that BDA was falsely represented as the owner of the debt. To the contrary, the import of the Court's ruling was that Defendants were entitled to summary judgment to the extent that Plaintiff had failed to raise a sufficient question of fact as to his assertion that Cadle was the true owner of the debt. Indeed, the Court explicitly stated such numerous times in its decision. *See, e.g.,* September 30, 2008 Order at 9 ("Plaintiff relies on the following information which he claims establishes, or at the very least creates a question of fact as to whether the debt is owned by Cadle Co. . . ."); *id.* at 10 ("The Financial Assets Sale Agreement provides no support for the claim that Cadle Co. is the owner of the debt."); *id.* ("the material provided from the <u>Kuehn</u> action do not support any inference that the

debt is owned by Cadle Co."); *id.* at 11 ("Plaintiff's receipt of telephone calls from the Cadle Co. does not support any inference that Cadle Co. was the owner of the debt at any time in or after April 2004."); *id.* at 12 ("the remaining information relied upon by Plaintiff . . . is insufficient . . . to permit a trier of fact to reasonably conclude that Cadle Co. is the owner of the debt during the relevant period").

Defendants maintain that logically the claim cannot remain in the case because BDA has been found to be the true owner of the debt. However, the Court never found that BDA was the owner of the debt. As the Court noted in its 2008 Order:

> In support of their motion defendants have submitted an affidavit of Diamond [which] avers that "in February 1997, the credit card account was assigned to BDA, and BDA has been the owner and holder of the credit card account from that time to the present. . . . Curiously, on the present motion defendants do not submit any documentation evidencing the assignment.

(2008 Order at 9.) After considering the record before it, the Court concluded as follows:

> In sum, defendants have put forth in the Diamond affidavit evidence that Plaintiff cannot establish his claim that Cadle Co., rather than BDA, is the owner of the debt. The burden therefore shifted to Plaintiff to offer "persuasive evidence that his claim was not 'implausible.'" *Brady*, 863 F.2d at 211. He has failed to sustain that burden. The evidence offered is not sufficient to permit the trier of fact to conclude that Cadle Co. was the owner of the debt at the relevant time.[] Plaintiff's repeated assertions that Cadle Co. is the true owner of the debt does not change this result when his evidence fails to support his characterization.

*Id.* at 13-14 (footnote omitted).

Contrary to Defendants' assertions, the 2008 Order did not dismiss all claims

6

regarding ownership of the debt.[2] Rather, it dismissed the claims premised on the assertion that TCC was the owner of the debt.

With respect to Defendants' other arguments, they need not detain the Court for long. Defendants assert that no claims remains against Cadle because "there is no specific claims as to any wrongdoings by Defendant Daniel Cadle" (Defs.' Mem. in Supp. of Reconsideration at 12). This argument, however, was not made by Cadle on the cross-motion for summary judgment. (*See* Defs.' Mem. in Support of Cross-Motion for Summary Judgment, (Dkt. No. 104-2).) Indeed, had all claims against Cadle been dismissed as a result of the September 30, 2008 Order, it would have been unnecessary for the Court to issue the Order to Show Cause dated October 2, 2008 directing Plaintiff to show cause why the action should not be dismissed as against Cadle pursuant Fed. R. Civ. P. 4(m).

Similarly, the merits of some of the other claims which this Court has held remain pending, for example, the obtaining of payment after the statute of limitations had expired, were not raised in the motions which resulted in the 2008 Order. In view of Defendants' failure to address, for example, this claim, that they may have moved for "summary judgment" – as opposed to "partial" summary judgment – is not dispositive for several reasons including the

---

[2] Defendants point to the Court's Order dated December 18, 2009 to support their claim that all claims of ownership of the debt have been resolved. The December 18, 2009 Order dealt with whether the action as against Defendants Bobby D. Associates, Daniel C. Cadle, John and Jane Does numbers 2 through 50, Steven Vlock and Vlock Associates, P.C. should not be dismissed pursuant Fed. R. Civ. P. 4(m), which rule requires that a defendant be served with a summons and complaint within 120 days after the complaint is filed. Therein, in a background footnote, the Court erroneously described the September 2008 Order as having granted summary judgment on the claims that defendants "misrepresented the true owner of the debt."

Court's ruling granting in part and denying in part Defendants' motions.

**Conclusion**

The motion for reconsideration is granted and upon reconsideration the Court adheres to its earlier determination.[3]

**SO ORDERED.**

Dated: Central Islip, New York
       April 16, 2010

/s/
Denis R. Hurley
Senior District Judge

---

[3] To the extent Plaintiff's Memorandum in Opposition to Defendants' Motion for Reconsideration seeks reconsideration of the 2008 Order insofar as it dismissed the claims against TCC, reconsideration is denied. First, the application is untimely. That Plaintiff filed a letter on March 4, 2010 addressing the same issue does not change this result. First that letter is itself untimely. Second, this Court does not accept letter motions, a fact about which Plaintiff has been reminded in the past.